# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:  Rescue Rangers, LLC,                          Case No. 16-32930-KLP
                Debtor.                          Chapter 7

Bruce H. Matson,
            Plaintiff,

v.                                                   Adv. Pro. No. 17-03652-KLP

Rescue Rangers, LLC, Delaware,
Office Dispatch, LLC,
Jeffery D. Katz,
Christopher L. Young,
JDKatz, P.C.,
            Defendants.


## MEMORANDUM OPINION

This matter is before the Court on the motion of Jeffrey D. Katz ("Katz"), Christopher L. Young ("Young") and JDKatz, P.C. ("JDKatz")[1] (collectively, the "Defendants"), to dismiss Counts IX and X of the complaint filed by chapter 7 trustee Bruce H. Matson (the "Trustee").  The Trustee seeks to recover assets allegedly fraudulently transferred and to hold the Defendants liable for aiding and abetting the fraudulent transfers and for conspiring to fraudulently transfer the assets. For the reasons set forth below, the motion will be granted.

---

[1]  The complaint alleges that JDKatz, P.C., is a Maryland professional corporation with a principal place of business in Maryland.

## BACKGROUND

On June 10, 2016, Rescue Rangers, LLC, (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[2] Plaintiff Bruce Matson was appointed as trustee in the Debtor's case.

On May 19, 2017, the Trustee filed a complaint (the "Complaint") against the Defendants, Rescue Rangers, LLC, Delaware ("Rescue Rangers Delaware"), and Office Dispatch, LLC ("Office Dispatch"), seeking to avoid and recover transfers pursuant to §§ 544, 548, and 550 of the Bankruptcy Code, seeking turnover of property of the estate, seeking a declaration that Rescue Rangers Delaware and Office Dispatch are the successors to and alter egos of the Debtor, and seeking to hold the Defendants liable for aiding and abetting and conspiring to fraudulently transfer the Debtor's assets.  In Count IX of the Complaint, the Trustee alleges that the Defendants aided and abetted the fraudulent transfers by counseling and assisting the Debtor in fraudulently transferring the assets and operations of the Debtor to Rescue Rangers Delaware.  In Count X of the Complaint, the Trustee alleges that the Defendants conspired with the Debtor's principal and Rescue Rangers Delaware to commit a fraud by agreeing to a scheme to transfer the Debtor's assets to Rescue Rangers Delaware for no consideration.  The Trustee

---

[2] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

requests that the Court enter judgment against the Defendants for no less than $1,536,321.54, plus attorney's fees, costs and punitive damages.[3]

On June 15, 2017, the Defendants filed a motion to dismiss Counts IX and X of the Complaint (the "Motion to Dismiss") for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012, Fed. R. Bankr. P. 7012.  The Defendants assert that as a matter of law they cannot be liable for aiding, abetting, or conspiring to make the fraudulent transfers because they were neither transferors nor transferees in the subject transfers.  A hearing on the Motion to Dismiss was

---

[3]  In Counts I-VIII of the Amended Complaint, the Trustee essentially pleads as follows:

Count I - the Debtor's transfers  of its dispatch employees to Office Dispatch and its operations to Rescue Rangers Delaware (the "Transfers") were made with the intent to delay hinder or defraud its creditors and are avoidable under 11 U.S.C. §§ 544(b)(1) and Va. Code Ann. § 55-80.

Count II - the Debtor's transfer of its operations to Rescue Rangers Delaware (the "Rescue Rangers Delaware Transfer") was not made for consideration deemed valuable in law and was made while the Debtor was insolvent (or rendered insolvent) and is thus avoidable pursuant to 11 US.C. § 544(b)(1) and Va. Code Ann. § 55-81.

Counts III and IV - the Rescue Rangers Delaware Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A) and (B).

Count V - the Trustee seeks, upon avoidance, to recover the Transfers or their value pursuant to 11 U.S.C. § 550(a).

Count VI - Office Dispatch and Rescue Rangers should be held liable for the Debtor's obligations as the Debtor's successors in interest.

Count VII - Office Dispatch should be liable for the Debtor's debts as the Debtor's alter ego.

Count VIII - Rescue Rangers Delaware must turn over all of the Debtor's accounts receivable that it collected but which should have gone to the Debtor, including all accounts receivable collected postpetition.

held on July 26, 2017, after which the Court took the matter under

advisement.

On August 1, 2017, after the Court had taken the Motion to Dismiss

under advisement, the Trustee amended the Complaint by adding two

additional counts pursuant to §§ 548 and 550, seeking to avoid and recover

payments made to JDKatz in the two years preceding the debtor's

bankruptcy filing.[4]  Counts IX and X of the Complaint were not affected by

the amendment.  On August 9, in response to the Amended Complaint, the

Defendants filed an amended motion to dismiss (the "Amended Motion"), to

which the Trustee has responded.  The Court finds that no further hearing is

necessary, and the Court's ruling will address the Amended Motion, as the

filing of the Amended Complaint has superseded the original Motion to

Dismiss.

## <u>JURISDICTION</u>

Counts IX and X of the Amended Complaint seek an award of damages

against the Defendants.  The recovery of damages would affect the amount of

property available for distribution to creditors, making these claims "related

to" the Debtor's bankruptcy estate.  Therefore, pursuant to 28 U.S.C. §§ 157

and 1334(b) and the general order of reference for the U.S. District Court for

---

[4]  The Trustee moved for permission to amend the Complaint on July 20, 2017.
There was no opposition to the motion, and the Court granted the motion by order
entered July 31, 2017.

the Eastern District of Virginia dated August 15, 1984, this Court has subject

matter jurisdiction.[5]

## STANDARD OF REVIEW AND FACTS

Under Rule 12(b)(6), all well-pleaded factual allegations in a complaint

are taken as true, and all reasonable inferences are drawn in favor of the

complaining party. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007);

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face."  A claim has facial
> plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (citation omitted).

"[L]egal conclusions, elements of a cause of action, and bare assertions devoid

of further factual enhancement" are insufficient and will not withstand a

motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591

F.3d 250, 255 (4th Cir. 2009).  The following are the facts as pled in the

Amended Complaint.

In 2008, the Debtor started a business providing roadside assistance to

customers of various insurance companies and auto clubs.  The Debtor's

---

[5] The Defendants deny that Counts IX and X are core proceedings and have not
consented to entry of a final order by the bankruptcy court.  To the extent that these
counts neither arise "under" title 11 nor arise "in" a case under title 11, 28 U.S.C.
§ 157(b)(1) but are only "related to" the Debtor's case (a "non-core" proceeding), or
the Court otherwise lacks jurisdiction to enter a final order, the Court submits these
findings and conclusions to the district court as its proposed findings of facts and
conclusions of law.  28 U.S.C. § 157(c)(1).

dispatchers would receive calls from customers needing services such as jump-starting car batteries, unlocking vehicles, delivering fuel and changing flat tires and would send employees of the Debtor to perform these services. The insurance companies and motor clubs would pay the Debtor a flat rate, and the Debtor would pay a portion of this amount to its roadside assistance employee who performed the service. The Debtor's gross receipts grew steadily and peaked at $4,300,000 in 2014.

In 2012, the Debtor's dispatch employees were transferred to Office Dispatch, a Virginia limited liability company with its principal place of business in Fredericksburg, Virginia. The Debtor and Office Dispatch were treated as the same entity, with the Debtor paying substantially all of Office Dispatch's expenses. In addition to paying the expenses of Office Dispatch, the Debtor paid a significant portion of the personal expenses of its sole owner, George Dante Suero ("Suero").

On November 2, 2015, a collective action suit was filed against the Debtor and Suero in the U.S. District Court for the Eastern District of Virginia seeking damages for unpaid overtime wages owed to the Debtor's employees performing roadside assistance. On November 17, 2015, the Debtor wrote a check in the amount of $12,000 to JDKatz for "Attorney Retainer."

In 2016, the Debtor transferred its operations to Rescue Rangers Delaware, a Delaware limited liability company with its principal place of

business in Fredericksburg, Virginia.[6]  As part of the transfer, Rescue Rangers Delaware signed new contracts with the insurance companies and auto clubs that previously were parties to assistance contracts with the Debtor.  The Debtor directed the insurance companies and auto clubs to make future requests for roadside assistance to Rescue Rangers Delaware and to deposit future payments for services into new bank accounts in the name of Rescue Rangers Delaware.

On June 10, 2016, the same date the Debtor filed its bankruptcy case, Suero filed an individual Chapter 7 bankruptcy petition in the Alexandria Division of this Court.  Suero acted as the Debtor's designee and testified on its behalf at the Debtor's § 341 meeting of creditors.

On July 12, 2016, the Debtor filed its schedules and statement of financial affairs, listing total assets of $1,341.11 and total liabilities of $2,879,200.84.  In Schedule E/F, the Debtor listed the Internal Revenue Service, Amex, and "Dwayne Vaughan, et al" as the only creditors.  The Debtor did not list its contracts with the insurance companies and auto clubs on Schedule G, which requires a debtor to disclose executory contracts and unexpired leases.  In an amended Schedule F, the Debtor stated that it owes Rescue Rangers Delaware $731,024.32 for "loans from Delaware, Rescue Rangers, LLC entity."

---

[6]  The Amended Complaint does not allege that the Debtor is a Virginia limited liability company; however, the voluntary petition filed by the Debtor states that its principal place of business is in Fredericksburg, Virginia.  In their Motion to Dismiss, the Defendants acknowledge that the Debtor is a Virginia limited liability company.

In its statement of financial affairs, the Debtor disclosed that it had $4.2 million in revenue in 2014 and $3.2 million in 2015.  The Debtor stated that it did not give any insider value in any form during the one year period prior to the petition date but disclosed that it paid $43,776.25 for attorney's fees to "Jeffrey David Katz, JDKATZ, P.C." between June 2015 and June 2016.

During the Debtor's July 20, 2016, meeting of creditors, Suero testified that the Debtor stopped operating on June 10, 2016, the petition date.  At the Debtor's continued meeting of creditors on January 23, 2017, Suero testified that:

1. Rescue Rangers Delaware's operations are the same as the Debtors.

2. The Debtor became insolvent in 2015.

3. Katz, Young and JDKatz advised Suero to transfer the Debtor's assets and operations to Rescue Rangers Delaware to separate the Debtor's assets from its liabilities.[7]

---

[7] The Complaint and the Amended Complaint list Katz and Young as attorneys by appending the suffix "Esq." to their names, although nothing else therein identifies them as such.  The Court notes that the certificate of service of the Complaint states that Katz and Young were served by mail at JDKatz, P.C.  The Complaint and Amended Complaint state that the Debtor wrote a check to "JDKatz, P.C." for "Attorney retainer," and the Amended Complaint further alleges that the "Debtor answered in question 4 of the Statement of Financial Affairs that it paid $43,776.25 for attorney's fees to 'Jeffrey David Katz, JDKATZ, P.C.' between June 2015 and June 2016," so it is possible to extrapolate that Katz and Young are attorneys with the JDKatz, P.C. law firm.  That JDKatz is a law firm is further supported by the Debtor's schedules, which list "JDKatz, P.C." as a creditor in the amount of $2,943.75, the basis of the claim being "legal fees."  The Motion to Dismiss, the Amended Motion, and the Motion to Amend, while not conclusive on the point, also

4. Suero is the sole member of the Debtor and Rescue Rangers Delaware.

5. The Debtor and Rescue Rangers Delaware have the same name for tax purposes.

6. The Debtor stopped operating on January 1, 2016.

7. Rescue Rangers Delaware's 2016 revenue was $2.4 million.

8. Rescue Rangers Delaware now pays Office Dispatch's payroll, including Suero's $80,000 a year salary.

9. The $731,024.32 loan identified in the Debtor's amended Schedule F as being owed by the Debtor to Rescue Rangers Delaware is not actually a loan but rather an accounting of money received by Rescue Rangers Delaware for work performed by the Debtor and repaid to the Debtor.

The Trustee has not been able to verify that the $731,024.32 was paid back to the Debtor.

In Count IX of the Amended Complaint, the Trustee alleges that JDKatz, Katz and Young assisted Suero and Rescue Rangers Delaware to fraudulently transfer the assets and operations of the Debtor to Rescue Rangers Delaware with the intention of defrauding creditors and with the knowledge of the Debtor's tax obligations and the pending collective action suit brought by the Debtor's employees. The Trustee further alleges that

---

support the conclusion that, for purposes of the Amended Motion, JDKatz is a law firm.

JDKatz, Katz and Young advised Suero and Rescue Rangers Delaware to transfer the assets "thereby aiding and abetting the fraud," and claims that an award of punitive damages is appropriate "[d]ue to the willful and wanton nature of JDKatz's, Katz's and Young's actions in specifically advising Mr. Suero and Rescue Rangers Delaware to commit the fraud."

In Count X, the Trustee alleges that JDKatz, Katz and Young reached an agreement with Suero and Rescue Rangers Delaware to fraudulently transfer the assets of the Debtor away from the Debtor's liabilities and that in furtherance of "this scheme" the assets were transferred for no consideration. The Trustee states that "[b]y advising Mr. Suero and Rescue Rangers Delaware to fraudulent (sic) transfer all the Debtor's assets and liabilities to Rescue Rangers and working with Mr. Suero and Rescue Rangers Delaware to complete the [transfers], JDKatz, Katz and Young conspired with Mr. Suero and Rescue Rangers Delaware to commit a fraud." Again, the Trustee seeks punitive damages because of "the willful and wanton nature of JDKatz's, Katz's and Young's actions in conspiring with Mr. Suero and Rescue Rangers Delaware to commit the fraud."

## ANALYSIS

The two counts at issue are entitled "Aiding and Abetting Fraudulent Transfer" (Count IX) and "Conspiracy to Fraudulently Transfer" (Count X). The Defendants argue that both of these counts should be dismissed because they did not participate in the subject transfers as either transferors or

transferees and because claims against a non-transferee for aiding and abetting a fraudulent transfer or conspiring to make a fraudulent transfer are not viable as a matter of law.

The Defendants do not concede that Virginia law applies to these claims but fail to identify which state's substantive law is applicable.[8] Nevertheless, they contend that these two counts should be dismissed because federal law does not recognize a claim under § 548 of the Bankruptcy Code for aiding and abetting a fraudulent transfer and because a majority of state courts have held that non-transferees cannot be liable for aiding and abetting, or conspiring to commit, a fraudulent conveyance.

The Trustee appears to take the position that these claims must be analyzed under Virginia law, although he offers both Virginia cases and cases interpreting the laws of other states in support of his contention that the claims are viable.  The Trustee also points to the Supreme Court's recent decision in *Husky International Electronics v. Ritz*, 136 S. Ct. 1581, 1587 (2016), in which the Court held that actual fraud can exist without misrepresentation, as a basis for finding that the alleged fraudulent transfers constitute actual fraud.  The Trustee maintains that fraud is a tort and that under Virginia law, aiding and abetting a tort and conspiring to commit a tort are valid claims.

---

[8]  Perhaps their hedging stems from an intention to argue in the future that the law of Maryland or Delaware should apply due to their and the alleged transferees' presence in those states.  In any event, the Defendants offer no basis for concluding that Virginia law is inapplicable.

To the extent the Trustee contends that liability would exist for aiding and abetting, or conspiring to commit, a fraudulent conveyance as a matter of federal law under the Bankruptcy Code, his contention is without merit. Section 550(a) of the Bankruptcy Code provides that the avoidance of a transfer under §§ 548 or 544 allows the trustee to recover only from "the initial transferee of such transfer or the entity for whose benefit such transfer was made" or from "any immediate or mediate transferee of such transferee." 11 U.S.C. § 550(a)(1) and (2). *See Gierum v. Glick (In re Glick),* 568 B.R. 634, 676-77 (Bankr. N.D. Ill. 2017) ("[Parties who neither received transferred property nor benefitted from a fraudulent transfer in some other way are not subject to liability. . . . That includes liability for damages on an aiding and abetting theory.  Overwhelmingly, courts have concluded that parties cannot be liable for a fraudulent transfer if all they have done is participate in it.") (internal citations omitted); *Ray v. Garland (In re Martin),* Adv. No. 10-5059, 2011 WL 6130422, at *5 (Bankr. E.D. Tenn. Dec. 8, 2011) ("[C]ourts have consistently held that 'there is no such thing as liability for aiding and abetting a fraudulent conveyance as a matter of federal law under the Code.'") (quoting *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair Inc.,* 419 B.R. 749, 761 (M.D. Tenn. 2009)).[9]  The Trustee has not alleged that the Defendants received transferred property or benefitted from a transfer.

---

[9]  Although the Trustee has not suggested that he has an independent right to pursue his claims for aiding and abetting or conspiracy under § 544(a)'s strong arm powers that extend beyond his avoidance powers, the Court would reject such an argument. *See State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.),* 371 B.R.

The Trustee's claims that the Transfers are also avoidable under Va. Code Ann. §§ 55-80[10] and 55-81[11] likewise do not overcome the limitations imposed by § 550(a).  Sections 55-80 and 55-81 void certain transfers but neither statute imposes liability on parties who are not transferees or beneficiaries.  Section 544 permits a trustee to utilize laws available to a creditor to avoid a debtor's transfer of property outside of bankruptcy, including §§ 55-80 and 55-81; however, as previously stated, § 550(a) limits the trustee's recovery under § 544 to transferees or those who have benefitted

---

281, 291 (Bankr. S.D. Ohio 2007) ("[Section] 544(a) does not confer standing on a trustee acting as a hypothetical lien creditor to bring creditors' tort actions under state law such as the Trustee's aiding and abetting claims in this case.").  *See also Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972) (a trustee in bankruptcy cannot maintain an action against a third party that could not have been maintained by the debtor); *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002) (citing *Caplin* and noting that the trustee has no standing to pursue a claim belonging solely to the estate's creditors).

[10]  Va. Code Ann. § 55-80 provides that:

Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

[11]  Va. Code Ann. § 55-81 provides that:

Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

from the transfer. [12]  *See Miller v. Greenwich Capital Fin. Prods., Inc. (In re Am. Bus. Fin. Servs., Inc.)*, 457 B.R. 314, 324 (Bankr. D. Del. 2011) ("Aiding and abetting a fraudulent transfer is not a valid claim under state or federal law where a trustee is bringing the claim.").  Again, there being no allegation that any of the Defendants were transferees or somehow benefitted from the transfers, there can be no claim against the Defendants for aiding and abetting the transfers.

The more difficult question stems from the Trustee's contention that the substance of Counts IX and X includes allegations sufficient to establish a direct claim for actual fraud against the Defendants.  A bankruptcy trustee generally possesses two categories of causes of action: (1) those possessed by the trustee as successor to the debtor's interest that are included in the bankruptcy estate under § 541(a)(1), and (2) those existing under one or more of the trustee's avoiding powers.  *Ray v. Garland (In re Martin),* 2011 WL 6130422, at *4 (citing Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 323.03[2] (16th ed. 2011)).  Having determined that § 550(a) bars a recovery against the Defendants under the Trustee's avoiding powers, the Court must now determine whether the Trustee has sufficiently pled a prepetition cause of action held by the Debtor that the Trustee may now pursue against the Defendants.

---

[12]  Both statutes envision the remedy to be the recovery of the transferred assets, or in some cases the value of the assets, from the transferee.

In order to determine whether viable claims exist under state law, it is necessary to first determine which state's law is applicable.  Inasmuch as Virginia is the forum state, the court must apply Virginia's choice of law rules.  *Arrowsmith v. Lemberg Law, LLC (In re Health Diagnostics Lab., Inc.),* 571 B.R. 182 (Bankr. E.D. Va. 2017).[13]  Counts IX and X of the Amended Complaint characterize the claims as relating to fraud, which is a tort.[14]  Under Virginia's choice of law principles, in a tort action brought in Virginia, the place of the "last event necessary to make an act liable for an alleged tort" determines which state's substantive law applies.  *Id.* (quoting *Quillen v. Int'l Playtex, Inc.* 789 F.2d 1041, 1044 (4th Cir. 1986)).  The Trustee does not specifically allege where the acts committed by the Defendants took place; however, the Debtor is a Virginia entity headquartered in Virginia, so it is reasonable to infer that the last events necessary to create liability, the transfers of the Debtor's assets, occurred in Virginia.  Accordingly, the Court will apply Virginia law to these claims.

The Trustee has not cited, nor has the Court been able to find, any statutory or case law establishing that tortious fraud in Virginia includes

---

[13]  Under the rule set forth in *KlaxonCo. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941), a bankruptcy court is required to apply the choice of law provisions of the state in which it sits.  *Compliance Marine, Inc. v. Campbell* (*In re Merritt Dredging Co.),* 839 F.2d 203, 205-06 (4th Cir. 1988).

[14]  *Horner v. Ahern*, 153 S.E.2d 216, 221 (Va. 1967).  While actions for breaching an attorney's duties to a client ordinarily arise under contract law, *Hewlette v. Hovis*, 318 F.Supp.2d 332, 335 (E.D. Va. 2004), the Trustee has not claimed breach of contract, negligence/legal malpractice, or breach of a fiduciary duty.

committing fraudulent transfers.[15]  The Trustee apparently is of the opinion

that the Supreme Court's decision in *Husky International Electronics, Inc. v.*

*Ritz* requires all courts for all purposes to acknowledge that any transfer of

assets with the "intent to hinder, delay, or defraud" a creditor constitutes

tortious fraud.

   This Court does not agree with the Trustee's understanding of *Husky*.

In *Husky*, the Supreme Court interpreted the phrase "actual fraud" found in

§ 523(a)(2)(A) of the Bankruptcy Code to "encompass fraudulent conveyance

schemes, even when those schemes do not involve a false representation."  *Id.*

at 1590.  It held that proof of a misrepresentation is not required in order to

render a debt nondischargeable if actual fraud otherwise has been

established.  The Court expressly refrained from "adopt[ing] a definition [of

fraud] for all times and circumstances."  *Id.* at 1586-87.[16]  Moreover, the

---

[15]  The Court is also unaware of any authority under Virginia law for a cause of action for conspiring to commit a fraudulent transfer.
   As recently as June of 2017, the Virginia Supreme Court has continued to generally view fraud as requiring a misrepresentation.  *See Gelber v. Glock*, 800 S.E.2d 800 (Va. 2017).  *See also Winn v. Aleda Constr. Co.*, 315 S.E.2d 193 (Va. 1984) (Fraud is a willful tort; it is the knowing misrepresentation of a material fact to one whose reasonable reliance results in damage).  The Amended Complaint includes no allegations of misrepresentation by the Defendants.

[16]  In *Gary L. Vance, LLC v. Crites (In re Crites)*, Adv. No. 15-ap-30, 2016 WL 6208314, at *4 (Bankr. N.D. W.Va. Oct. 21, 2016), Judge Flatley had the occasion to examine the scope of *Husky*, albeit in the context of an action to determine whether certain claims would be discharged under § 523(a) of the Bankruptcy Code, and made the following observation:

> In finding that "actual fraud" can exist without a misrepresentation, the Supreme Court expanded the scope of § 523(a)(2)(A) in cases where "actual fraud" is alleged. The terms included within § 523(a)(2)(A), including "actual fraud," are interpreted as defined at common law. *Field v. Mans*, 516 U.S. 59, 69, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). "Actual fraud" is comprised of two parts: "actual" and "fraud." *Husky*, at 1586. At common law, "actual"

Court did not conclude that Husky International's claim should be excepted from discharge; rather, it remanded the case, instructing the Fifth Circuit to determinate whether liability existed under Texas law. *Id.* On remand from the Fifth Circuit, the bankruptcy court found that the debtor had committed actual fraud under the Texas Uniform Fraudulent Transfer Act and ruled that the debt would not be discharged. *Husky Int'l Elec., Inc. v. Ritz* (*In re Ritz)*, 567 B.R. 715, 739-56 (Bankr. S.D. Tex. 2017).

*Husky* deals only with § 523(a)(2)(A) of the Bankruptcy Code. It does not impose an obligation on Virginia courts to recognize a distinct cause of action for tortious fraud whenever there has been a transfer of property made with "the intent to hinder, delay, or defraud" a creditor. In the absence of any supporting statutory law or common law authority in Virginia, this Court will not do so.[17]

Without the existence of an underlying tort, there can be no action for conspiracy to commit, or for aiding and abetting, the tort, because the object of a conspiracy claim is to spread liability to parties than the original tortfeasor. *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007) ("[A] common

---

"denotes any fraud that "involve[es] moral turpitude or intentional wrong." *Id.* (citing *Neal v. Clark*, 95 U.S. 704, 709, 24 L. Ed. 586 (1878). Thus, actual fraud is any fraud carried out with wrongful intent. *Id.* "Fraud" proved far more challenging to define, and while the Court noted that it generally involves "deception or trickery," it elected to refrain from "adopt[ing] a definition for all times and circumstances." *Id.* at 1586-87.

[17] *See Sheehan v. Saoud*, 650 F.App'x 143, 155 (4th Cir. 2016) (unpublished) ("[T]he Court is reticent to expand the bounds of West Virginia policy by recognizing a civil conspiracy claim for violation of the WVUFTA [West Virginia Uniform Fraudulent Transfer Act] for the first time. . . . Therefore, the Court declines to make such a policy determination to recognize that a violation of the WVUFTA sounds in tort.")

law claim of civil conspiracy generally requires proof that the underlying tort

was committed").[18]  Therefore, Counts IX and X of the Amended Complaint

do not sufficiently state a cause of action under Virginia law that may be

maintained by the Trustee on behalf of the bankruptcy estate.

Although Counts IX and X of the Amended Complaint are not

sustainable insofar as they allege causes of action for conspiracy to

fraudulently transfer or for aiding and abetting fraudulent transfers, claims

that do not exist under federal or Virginia law, and do not sufficiently plead

an independent cause of action for tortious fraud, it would appear that the

facts alleged by the Trustee may partially support other causes of action

against the Defendants.  In *Simmons v. Miller*, 544 S.E. 2d 666 (Va. 2001),

the Virginia Supreme Court recognized the viability of a cause of action

under Virginia's business conspiracy statutes[19] against an attorney when it

---

[18]  In that vein, the Court notes that the measure of damages against the Defendants would be dependent upon on the Trustee's recovery against transferees Rescue Rangers Delaware and Office Dispatch, as sought in the other counts of the Amended Complaint.

[19]  Va. Code Ann. § 18.2-499 states, in pertinent part, the following:

A. Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

B. Any person who attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A of this section shall be guilty of a

could be established that the attorney "combined, associated, agreed, mutually undertook, or concerted together with" an officer and director of a corporation to injure a corporation by creating a competing business and transferring the assets to the competitor.  *Id.* at 578-79.  Although the Amended Complaint includes allegations that the Debtor wrote checks for "attorney retainer" and "attorney's fees" to JDKatz, it fails to describe the nature of the relationship between and among JDKatz and the other Defendants.  Further, the Amended Complaint fails to set forth the exact nature of the roles the Defendants held in relation to the Debtor, Rescue Rangers Delaware, and Office Dispatch.[20]  And, while the Amended Complaint alleges that Suero is the sole owner of the Debtor, Office Dispatch and Rescue Rangers Delaware, it fails to set forth the fiduciary obligations, if any, that Suero or any other party may have owed to the Debtor.  These relationships and obligations would likely be factors in determining potential causes of action.[21]

---

<div style="margin-left:2em">

violation of this section and subject to the same penalties set out in subsection A.

Va. Code Ann. § 18.2-500 permits the recovery of three-fold damages and reasonable attorney's fees for a violation of § 18.2-499.

</div>

[20] *See supra* note 1.

[21] *See Schnelling v. Crawford (In re James River Coal Co.),* 360 B.R. 139, 174 (Bankr. E.D. Va. 2007) ("Aiding and abetting a breach of fiduciary duty is a viable claim under Virginia law.").  *See also Butler v. Enhanced Equity Fund II, LP (In re Am. Ambulette & Ambulance Serv., Inc.),* 560 B.R. 256, 268-69 (Bankr. E.D.N.C. 2016)("[T]his court predicts that the Supreme Court of Virginia would recognize a claim for aiding and abetting a breach of fiduciary duty.").  *But see Calderon v. Aurora Loan Serv., Inc.,* No. 1:10CV129, 2010 WL 2306343, at *6 (E.D. Va. June 3, 2010) (dismissing claim for aiding and abetting a tort after finding that the existence of such a tort was not clearly established under Virginia law); *Microstrategy Servs. Corp. v. OpenRisk, LLC,* No. 1:14CV1244, 2015 WL 1221263, at *3 (E.D. Va. Mar.

The Court is aware that Rule 9(b) of the Federal Rules requires particularity when pleading fraud.  The Court also recognizes that a less stringent standard may be permitted in some cases in which a chapter 7 trustee is bringing a fraudulent transfer claim.  *See Sterne Agee Grp. v. Robinson (In re Anderson & Strudwick, Inc.)*, Adv. Pro. No. 14-03175-KLP, 2015 WL 1651146, at *10, n.9 (Bankr. E.D. Va.  Apr. 8, 2015).  The allegations included in the Amended Complaint, to the extent they may partially support a viable cause of action against the Defendant, lack sufficient particularity even under a relaxed standard.  For those reasons, along with the reasons previously set forth, the Court will grant the Defendants' Amended Motion to dismiss Counts IX and X of the Amended Complaint.

It may be possible for the Trustee to withstand a motion to dismiss if given an opportunity to file an amended pleading.  Finding that justice so requires, the Court will grant the Trustee leave to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 15(a)(2), made applicable by Bankruptcy Rule 7015, Fed. R. Bankr. P. 7015.  Accordingly, the Amended Motion is granted, but without prejudice to the Trustee filing an amended complaint within thirty days.

---

17, 2015) (dismissing claim for aiding and abetting breach of fiduciary duty), reconsideration granted on other grounds, 2015 WL 2126924 (E.D. Va. May 6, 2015).

A separate order will be entered consistent with this opinion.

Signed:  September 29, 2017

_____/s/ Keith L. Phillips_____
United States Bankruptcy Judge

Copies:

Entered on Docket:  September 29, 2017

Christian K. Vogel
Vogel & Cromwell, LLC
8550 Mayland Drive Suite 204
Richmond, VA 23294

John T. Donelan
Law Office of John T. Donelan
125 S. Royal Street
Alexandria, VA 22314

Jeffrey H. Geiger
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

John C. Smith
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998