## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:  Rescue Rangers, LLC,                    Case No. 16-32930-KLP
                Debtor.                    Chapter 7

Bruce H. Matson,
                Plaintiff,


v.                                              Adv. Pro. No. 17-03652-KLP


Rescue Rangers, LLC, Delaware,
Office Dispatch, LLC,
Jeffery D. Katz,
Christopher L. Young,
JDKatz, P.C., and
George Dante Suero,
                Defendants.

### <u>MEMORANDUM OPINION</u>

This matter is before the Court on the motion of Jeffrey D. Katz

("Katz"), Christopher L. Young ("Young") and JDKatz, P.C. ("JDKatz")

(collectively, the "Katz Defendants"), to compel arbitration or to dismiss

Counts IX, X, XI and XII of the second amended complaint (the "Second

Amended Complaint") filed by chapter 7 trustee Bruce H. Matson (the

"Trustee").[1]  Also before the Court is the motion of Defendant George Dante

Suero ("Suero") to dismiss him as a defendant and to dismiss Counts IX and

XI of the Second Amended Complaint.  For the reasons set forth herein,

---

[1]  On February 21, 2018, Bruce H. Matson resigned as trustee, and Lynn L.
Tavenner was appointed trustee in the Debtor's case.  Unless otherwise noted, all
references to "the Trustee" in this Memorandum Opinion are to Matson in his role as
trustee, as all of the relevant events took place during his tenure as trustee.

Suero's motion to dismiss will be denied, and the Katz Defendants' motion

will be granted in part and deferred in part.

## BACKGROUND

On June 10, 2016, Rescue Rangers, LLC, (the "Debtor") filed a

voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[2]  Suero

acted as the Debtor's designee and testified on its behalf at the Debtor's § 341

meeting of creditors.  Plaintiff Bruce Matson was appointed as trustee in the

Debtor's case.

On May 19, 2017, the Trustee filed a complaint (the "Complaint")

against the Katz Defendants, Rescue Rangers, LLC, Delaware ("Rescue

Rangers Delaware"), and Office Dispatch, LLC ("Office Dispatch"), seeking to

avoid and recover transfers pursuant to §§ 544, 548, and 550 of the

Bankruptcy Code, seeking turnover of property of the estate, seeking a

declaration that Rescue Rangers Delaware and Office Dispatch are the

successors to the Debtor, seeking a declaration that Office Dispatch is the

alter ego of the Debtor, and seeking to hold the Katz Defendants liable for

aiding and abetting the fraudulent transfer of the Debtor's assets to Rescue

Rangers Delaware (the "Transfer") and for conspiring to fraudulently transfer

the Debtor's assets.

The Katz Defendants moved to dismiss Counts IX and X of the

Complaint (the "Motion to Dismiss") for failure to state a claim upon which

relief can be granted, asserting that as a matter of law they could not be

---

[2]  All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

liable for aiding, abetting, or conspiring to make the Transfer because they

were neither transferors nor transferees in the Transfer. In Count IX of the

Complaint, the Trustee had alleged that the Katz Defendants aided and

abetted the fraudulent transfers by counseling and assisting the Debtor in

fraudulently transferring the assets and operations of the Debtor to Rescue

Rangers Delaware.  In Count X of the Complaint, the Trustee had alleged

that the Katz Defendants conspired with the Debtor's principal and Rescue

Rangers Delaware to commit a fraud by agreeing to a scheme to transfer the

Debtor's assets to Rescue Rangers Delaware for no consideration.

On August 1, 2017, after the Court had taken the Motion to Dismiss

under advisement, the Trustee amended the Complaint (the "Amended

Complaint") by adding two additional counts pursuant to §§ 548 and 550,

seeking to avoid and recover payments made to JDKatz in the two years

preceding the debtor's bankruptcy filing.[3]  Counts IX and X of the Complaint

were not affected by the amendment.  On August 9, in response to the

Amended Complaint, the Katz Defendants filed an amended motion to

dismiss (the "Amended Motion").

The Court granted the Amended Motion, ruling that Counts IX and X

of the Amended Complaint did not sufficiently state a cause of action under

---

[3]  The Trustee moved for permission to amend the Complaint on July 20, 2017.
There was no opposition to the motion, and the Court granted the motion by order
entered July 31, 2017.

Virginia law.[4]  However, the Court noted that it might be possible for the Trustee to withstand a motion to dismiss if given an opportunity to file an amended pleading.  Therefore, the Court gave the Trustee thirty days within which to file an amended complaint.

The Trustee timely filed the "Second Amended Complaint" on October 30, 2017.  The Second Amended Complaint essentially includes the same first eight counts as the Amended Complaint but adds Suero as a defendant in Count VII, the alter ego count.[5]  With respect to the remaining counts, the Second Amended Complaint differs from the Amended Complaint.  The remaining counts are as follows:

---

[4]  The Court's ruling included the Amended Motion, finding that the filing of the Amended Complaint superseded the original Motion to Dismiss.

[5]  In Counts I-VIII of the Complaint, Amended Complaint, and Second Amended Complaint the Trustee essentially pled as follows:

> Count I - the Debtor's transfer of its assets and operations to Rescue Rangers Delaware (the "Transfer") was made with the intent to delay hinder or defraud its creditors and are avoidable under 11 U.S.C. §§ 544(b)(1) and Va. Code Ann. § 55-80.
> Count II - the Transfer was not made for consideration deemed valuable in law and was made while the Debtor was insolvent (or rendered insolvent) and is thus avoidable pursuant to 11 US.C. § 544(b)(1) and Va. Code Ann. § 55-81.
> Counts III and IV - the Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A) and (B).
> Count V - the Trustee seeks, upon avoidance, to recover the Transfer or its value pursuant to 11 U.S.C. § 550(a).
> Count VI - Office Dispatch and Rescue Rangers should be held liable for the Debtor's obligations as the Debtor's successors in interest.
> Count VII - Office Dispatch should be liable for the Debtor's debts as the Debtor's alter ego.
> Count VIII - Rescue Rangers Delaware must turn over all of the Debtor's accounts receivable that it collected but which should have gone to the Debtor, including all accounts receivable collected postpetition.

The Court notes that the numbering of the counts is slightly out of order in the Second Amended Complaint.

Count IX – Conversion. The Trustee alleges that Suero and Rescue Rangers Delaware converted the Debtor's assets and operations by transferring its assets and operations to Rescue Rangers Delaware and seeks an award of actual damages.

Count IXA[6] – Breach of Fiduciary Duty. The Trustee alleges that Suero breached his fiduciary duty to the Debtor and seeks an award of actual and punitive damages.

Count X – Aiding and Abetting Breach of Fiduciary Duty. The Trustee alleges that the Katz Defendants aided and abetted Suero's breach of his fiduciary duty to the Debtor and seeks an award of actual and punitive damages.

Count XI – Statutory Business Conspiracy. The Trustee alleges that Suero and the Katz Defendants conspired to injure the Debtor in its business in violation of Virginia Code §§ 18.2-499 and 18.2-500 and seeks an award of treble damages and attorney's fees.

Count XII – Legal Malpractice. The Trustee alleges that the Katz Defendants breached their duties to the Debtor and breached their contract with the Debtor by advising and assisting Suero in transferring the Debtor's assets to Rescue Rangers Delaware and seeks actual and punitive damages.

---

[6] There are two counts labeled IX in the Second Amended Complaint. For clarity, the Court has labeled the Fiduciary Duty count as Count IXA.

Count XIII – Avoidance of Fraudulent Transfers to JD Katz.  The Trustee alleges that the payment of $43,776.25 in fees to JDKatz during the two years prior to the filing of the Debtor's bankruptcy case were fraudulent transfers within the meaning of § 548(a)(1)(B) of the Bankruptcy Code and are avoidable.

Count XIV – Recovery of Fraudulent Conveyance.  The Trustee seeks to recover, pursuant to 11 U.S.C. § 550(a), the fees paid to JDKatz by the Debtor, if those fees are avoided in Count XIII.

The prayer in the Second Amended Complaint also asks for an award of "costs and disbursements incurred by the Trustee" in this adversary proceeding.

On November 13, 2017, the Katz Defendants filed a motion to dismiss Counts IXA (breach of fiduciary duty), X (aiding and abetting breach of fiduciary duty), XI (statutory business conspiracy), and XII (legal malpractice) of the Second Amended Complaint (the "Katz Motion").  On December 4, 2017, Suero filed a motion to dismiss Counts IX (conversion) and XI (statutory business conspiracy) (the "Suero Motion" and together with the Katz Motion, the "Motions.")  The Trustee has responded to the Motions, and the Katz Defendants have filed a supplemental response.  A hearing on the

Motions was held on December 20, 2017, after which the Court took the

Motions under advisement.

## JURISDICTION

The Second Amended Complaint seeks an award of damages against

Office Dispatch, Rescue Rangers Delaware, the Katz Defendants and Suero.

The recovery of damages would affect the amount of property available for

distribution to creditors, making the claims "related to" the Debtor's

bankruptcy estate.  Therefore, pursuant to 28 U.S.C. §§ 157 and 1334(b) and

the general order of reference for the U.S. District Court for the Eastern

District of Virginia dated August 15, 1984, this Court has subject matter

jurisdiction.[7]  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## STANDARD OF REVIEW AND FACTUAL ALLEGATIONS

Under Rule 12(b)(6), all well-pleaded factual allegations in a complaint

are taken as true, and all reasonable inferences are drawn in favor of the

complaining party.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007);

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face."  A claim has facial
> plausibility when the plaintiff pleads factual content that

---

[7] The Katz Defendants deny that Counts IXA, X, XI, and XII are core proceedings
and have not consented to entry of a final order by the bankruptcy court.  To the
extent that these counts neither arise "under" title 11 nor arise "in" a case under
title 11, 28 U.S.C. § 157(b)(1) but are only "related to" the Debtor's case (a "non-core"
proceeding), or the Court otherwise lacks jurisdiction to enter a final order, the
Court submits these findings and conclusions to the district court as its proposed
findings of facts and conclusions of law.  28 U.S.C. § 157(c)(1).

> allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (citation omitted).

"[L]egal conclusions, elements of a cause of action, and bare assertions devoid

of further factual enhancement" are insufficient and will not withstand a

motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591

F.3d 250, 255 (4th Cir. 2009).

The following are the facts as pled in the Second Amended Complaint.

In 2008, the Debtor started a business providing roadside assistance to

customers of various insurance companies and auto clubs.  The Debtor's

dispatchers would receive calls from customers needing services such as

jump-starting car batteries, unlocking vehicles, delivering fuel and changing

flat tires and would send employees of the Debtor to perform these services.

The insurance companies and motor clubs would pay the Debtor a flat rate,

and the Debtor would pay a portion of this amount to its roadside assistance

employee who performed the service.  The Debtor's gross receipts grew

steadily and peaked at $4,300,000 in 2014.

In 2012, the Debtor's dispatch employees were transferred to Office

Dispatch, a Virginia limited liability company with its principal place of

business in Fredericksburg, Virginia.  The Debtor and Office Dispatch were

treated as the same entity, with the Debtor paying substantially all of Office

Dispatch's expenses.  In addition to paying the expenses of Office Dispatch,

the Debtor paid a significant portion of the personal expenses of its sole

owner, George Dante Suero ("Suero").

On November 2, 2015, a collective action suit was filed against the

Debtor and Suero in the U.S. District Court for the Eastern District of

Virginia (the "Collective Action") seeking damages for unpaid overtime wages

owed to the Debtor's employees performing roadside assistance.  On

November 17, 2015, the Debtor wrote a check in the amount of $12,000 to

JDKatz for "Attorney Retainer."

In 2016, the Debtor transferred its operations to Rescue Rangers

Delaware, a Delaware limited liability company with its principal place of

business in Fredericksburg, Virginia.  As part of the transfer, Rescue Rangers

Delaware signed new contracts with the auto clubs that previously were

parties to assistance contracts with the Debtor.  The Debtor directed the

insurance companies and auto clubs to make future requests for roadside

assistance to Rescue Rangers Delaware and to deposit future payments for

services into new bank accounts in the name of Rescue Rangers Delaware.  In

addition, all of the Debtor's roadside assistance technicians were required to

sign new employment agreements with Rescue Rangers Delaware.  Rescue

Rangers Delaware took over use of all of the Debtor's intellectual property,

including its name and logo.

In December, 2016, Young advised the Debtor's insurance carriers that

JDKatz was corporate counsel to "Rescue Rangers," that Rescue Rangers,

LLC, had reorganized and was in the process of winding down its business operations, and that all "property, assets, debts, and liabilities are currently in the process of being sold from Rescue Rangers as a Virginia LLC to Rescue Rangers as a Delaware LLC." Young further requested that the insurance companies cause their records to reflect new corporate and tax information, including a new employer identification number.

On July 12, 2016, the Debtor filed its schedules and statement of financial affairs, listing total assets of $1,341.11 and total liabilities of $2,879,200.84. In Schedule E/F, the Debtor listed the Internal Revenue Service, Amex, and "Dwayne Vaughan, et al" as the only creditors. The Debtor did not list its contracts with the insurance companies and auto clubs on Schedule G, which requires a debtor to disclose executory contracts and unexpired leases. In an amended Schedule F, the Debtor stated that it owes Rescue Rangers Delaware $731,024.32 for "loans from Delaware, Rescue Rangers, LLC entity."

In its statement of financial affairs, the Debtor disclosed that it had $4.2 million in revenue in 2014 and $3.2 million in 2015. The Debtor stated that it did not give any insider value in any form during the one year period prior to the petition date but disclosed that it paid $43,776.25 for attorney's fees to "Jeffrey David Katz, JDKATZ, P.C." between June 2015 and June 2016.

During the Debtor's July 20, 2016, meeting of creditors, Suero, acting as the Debtor's designee, testified that the Debtor stopped operating on June 10, 2016, the petition date.  At the Debtor's continued meeting of creditors on January 23, 2017, Suero testified that:

a. Rescue Rangers Delaware's operations are the same as the Debtor's;

b. Katz, Young, and JDKatz advised Suero to transfer the Debtor's assets and operations to Rescue Rangers Delaware to separate the Debtor's assets from its liabilities;

c. Suero is the sole member of the Debtor and Rescue Rangers Delaware;

d. The Debtor and Rescue Rangers Delaware have the same name for tax purposes;

e. The Debtor stopped operating on January 1, 2016;

f. Rescue Rangers Delaware started operating on January 1, 2016;[8]

g. Rescue Rangers Delaware's 2016 revenue was $2.4 million;

h. Rescue Rangers Delaware now pays Office Dispatch's payroll, which includes Suero's $80,000.00 a year salary; and

i. The $731,024.32 loan identified in the Debtor's amended Schedule F (ECF No. 19) as being owed by the Debtor to Rescue

---

[8] The Trustee states in a footnote to the Second Amended Complaint that Debtor's bank statements reflect that it was still receiving payments from the Motor Clubs in June 2016, the last statement provided to the Trustee by the Debtor.

Rangers Delaware is actually an amount received by Rescue Rangers Delaware for work performed by the Debtor that Rescue Rangers Delaware owed to the Debtor.[9]

The transfer of the Debtor's assets to Rescue Rangers Delaware was accomplished by Suero to separate the Debtor's assets from its liabilities for tax purposes and because the Collective Action was pending in the Virginia District Court.

On June 10, 2016, the same date the Debtor filed its bankruptcy case, Suero filed an individual Chapter 7 bankruptcy petition in the Alexandria Division of this Court.[10]  Suero was denied a discharge, and in its Findings of Fact and Conclusions of Law,[11] the Court found, among other things, that:

a. "On December 9, 2015, [the Debtor]'s attorneys at JD Katz, P.C., advised the insurance companies that [the Debtor] was 'winding down,' and requested that the insurance companies transfer the contracts to [Rescue Rangers Delaware]." (Findings at p. 2).

b. "Mr. Suero wrote a check payable to his attorneys at JD Katz, P.C., in the amount of $12,000, on November 11, 2015. Pl.

---

[9]  The Trustee notes in a footnote to the Second Amended Complaint that the "loan" was not identified in the Debtor's original schedules (ECF No. 17).  The Trustee has not seen evidence of the $731,024.32 having been paid back to the Debtor.

[10]  Case No. 16-12029-BFK (Bankr. E.D. Va.).

[11]  Adv. Pro. No. 16-01184-BFK (Bankr. E.D. Va.), Docket # 41.  The Court notes that the Court's Findings of Fact and Conclusions of Law are now on appeal to the United States District Court.

Ex. 12. The letters to the insurance companies went out on December 9, 2015. Def. Exs. S. T." (Findings at n. 2)

c. "It was [Suero's] intent to file a bankruptcy petition for [the Debtor], and to go on with his business under the banners of [Rescue Rangers Delaware] and Office Dispatch, free and clear of the [Debtor's] creditor's claims." (Findings at p. 15).

d. Suero caused the Debtor "to transfer its most valuable assets, the third party contracts with the insurance companies, to his wholly-owned company for no consideration, effective January 1, 2016." (Findings at p. 16).

e. "[A]lmost all of the badges of fraud are present: [the Debtor] had been sued by the Drivers in November 2015; [the Debtor's] counsel was requesting an additional $75,000 to $100,000 to continue to represent the company; Mr. Suero was the 100% owner of both companies and retained possession, control and use of the assets; the transfer lacked any valuable consideration; and Mr. Suero attempted to conceal the transfers and the value of the assets in the [Debtor's] bankruptcy proceedings." (Findings at p. 17).

f. "The Court finds that the transfer of the contracts from [the Debtor] to [Rescue Rangers Delaware] effective January 1, 2016

was a transfer made with the intent to hinder, delay or defraud

[the Debtor's] creditors." (Findings at p. 17).

## THE KATZ MOTION

The Katz Motion seeks dismissal of four counts of the Second Amended

Complaint. Those counts are Count IXA (breach of fiduciary duty), Count X

(aiding and abetting breach of fiduciary duty), Count XI (statutory business

conspiracy), and Count XII (legal malpractice).  In the alternative, the Katz

Motion seeks to have the Court compel arbitration and stay proceedings

pending arbitration.  Docket 36 at 7, n.9.

In Count IXA, the Trustee cites Virginia Code § 13.1-1024.1(A)'s

proviso that "[a] manager shall discharge his or its duties as a manager in

accordance with the manager's good faith business judgment of the limited

liability company."  The Trustee alleges that Suero breached his fiduciary

duty to the Debtor by "fraudulently transferring all of the Debtor's valuable

assets and operations for no consideration to Rescue Rangers Delaware,

leaving the Debtor with substantial debts and no assets with which to repay

those debts."

In Count X, the Trustee claims that the Katz Defendants assisted

Suero with the fraudulent transfer of assets from the Debtor to Rescue

Rangers Delaware.  Further, the Trustee argues that the Katz Defendants,

knowing of Suero's fiduciary obligations to the Debtor, advised Suero to

transfer the assets to Rescue Rangers Delaware for the purpose of avoiding

the Debtor's tax obligations and the pending Collective Action, thus aiding and abetting Suero in breaching his fiduciary obligations to the Debtor.  The Trustee asserts that the Debtor and its estate have been damaged in the amount of the transferred assets and the costs of recovering those assets and seeks damages therefor.  The Trustee also seeks an award of punitive damages, alleging that the actions of the Katz Defendants were willful and wanton.

In Count XI, the Trustee alleges that collaborative actions of Suero and the Katz Defendants in causing the transfer of the Debtor's assets to Rescue Rangers Delaware constituted a conspiracy in violation of Va. Code Ann. § 18.2-499.[12]  The Trustee seeks the same damages sought in Count X and seeks treble damages as prescribed in Va. Code Ann. § 18.2-500.[13]

---

[12] Va. Code Ann. § 18.2-499 provides that:
> A. Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.
> B. Any person who attempts to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A of this section shall be guilty of a violation of this section and subject to the same penalties set out in subsection A.
> C. This section shall not affect the right of employees lawfully to organize and bargain concerning wages and conditions of employment, and take other steps to protect their rights as provided under state and federal laws.

[13] Va. Code Ann. § 18.2-500(A) provides that:

In Count XII, the Trustee alleges that the Katz Defendants, by advising and assisting Suero to fraudulently transfer Debtor's assets to Rescue Rangers Delaware, breached their duties to the Debtor and also breached their contract to provide legal services to the Debtor, thus causing the Debtor's loss of its assets.  Count XII appears to base its claim both on negligence and upon breach of contract.  The Trustee seeks an award of the same damages sought in Count X and also seeks an award of punitive damages, asserting that the actions of the Suero and the Katz Defendants were willful and wanton.

As a preliminary matter, the Court notes that Count IXA does not seek relief against the Katz Defendants. The Katz Motion requests that the count be dismissed "[t]o the extent [the Katz Defendants] are named as parties." Although Count IXA as set forth in the Second Amended Complaint does not assert liability on the part of the Katz Defendants for breach of fiduciary duty, the prayer for relief is less clear.  The prayer seeks a judgment against the Katz Defendants and Suero, jointly and severally, for "breach of fiduciary duty and aiding and abetting and [sic] breach of fiduciary duty."  However, because Count IXA itself does not allege any breach of fiduciary duty by the Katz Defendants, it fails to state a cause of action against them and must be

---

A. Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

dismissed as to them.  Therefore, the Katz Motion as to Count IXA will be granted and that count will be dismissed as to the Katz Defendants.

The Katz Defendants assert that the remaining three counts at issue should be dismissed for a lack of subject matter jurisdiction and for failure to state a claim. Alternatively, they request that the Court compel arbitration on any counts asserted against them.  In support of their position, they point to the arbitration provision of the October 1, 2014, engagement agreement (the "Engagement Agreement") between the parties.  A copy of the Engagement Agreement is attached to the Katz Motion as Exhibit 1.  The Engagement Agreement consists of two parts, a retainer agreement in letter form (the "Retainer Letter") and a document entitled "Terms of Engagement," which was attached to and referenced in the Retainer Letter.  The arbitration provision (the "Arbitration Provision") is contained in the Terms of Engagement document.  That provision states that:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by Creative Dispute Resolutions, LLC, or its successor in interest, in accordance with its arbitration rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

The Trustee counters that the Arbitration Provision is inapplicable because of the further qualification found in the Retainer Letter that "[t]he scope of this engagement does not include any representation on any other matter, trial, or any appeal, should there be any.  These would also be the subject of separate engagements, should they ever become necessary."  The Trustee

argues that any advice on the transfer of assets would not have been covered by the Engagement Letter and thus the Arbitration Provision contained therein would not apply to advice as to the transfer of assets.

While it is true that the Court may not require a party to submit to arbitration if that party has not agreed to do so,[14] the Fourth Circuit has held that "we leave all questions concerning the scope of an arbitration agreement to the arbitrator, 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Winston Salem Mailers Union 133, CWA v. Media Gen. Operations, Inc.*, 55 F. App'x 128, 133 (4th Cir. 2003) (quoting *AT & T Techs., Inc. v. CWA*, 475 U.S. 643, 50 (1986).  Therefore, in this instance, if the Court finds arbitration to be proper, the scope of the Arbitration Provision is properly an issue for the arbitrator to determine.

The Katz Defendants point to the strong public policy in favor of arbitration that is set forth in the Federal Arbitration Act, 9 U.S.C. §§ 1-307.  In *Moses v. CashCall, Inc.,* 781 F.3d 63 (4th Cir. 2015), the Fourth Circuit stated that "[t]o be sure, the arbitration policies implemented by the Federal Arbitration Act are to be robustly followed." *Id.* at 71 (citation omitted).[15]  It

---

[14]  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

[15]  *See, e.g., CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) ("[The FAA] establishes 'a liberal federal policy favoring arbitration agreements.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to

stated that "in cases where tension arises between the FAA and another statute, the Supreme Court has provided a framework for resolving it, holding that the party seeking to prevent enforcement of an applicable arbitration agreement must show that 'Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.* (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000)).  The court then emphasized that by enacting the Bankruptcy Code, "Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Id.* (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)).

In *Moses v. CashCall*, the Fourth Circuit found that "forcing [a debtor] to arbitrate her constitutionally core claim would inherently conflict with the purposes of the Bankruptcy Code." *Id.* at 73.  However, it further held that the refusal to send a non-core claim to arbitration requires more than a finding that arbitration would potentially conflict with the purposes of the Bankruptcy Code.  Rather, the conflict must be inherent and "sufficient to override by implication the presumption in favor of arbitration." *Id.* at 89 (quoting *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re U.S. Lines)*, 197 F.3d 631, 640 (2d Cir. 1999)).  The Fourth Circuit explained core and non-core claims and the role of the bankruptcy courts as to each:

---

arbitrate...."). *See also Bates v. Lundy Motors, LLC*, 2016 WL 6089827, Civ. No. 3:16cv133 (HEH) (E.D. Va. Sept. 30, 2016), report and recommendation adopted at Civil Action No. 3:16cv133-HEH, 2016 WL 6089727 (E.D. Va. Oct. 17, 2016).

Bankruptcy courts may decide core bankruptcy claims, which include the "allowance or disallowance of claims against the estate" and "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(B)-(C). A bankruptcy court may also hear related non-core claims, but it cannot finally resolve them and must instead submit proposed findings of fact and conclusions of law to the district court. Id. § 157(c)(1).

The Supreme Court has modified these statutory assignments of responsibility, holding that Article III of the Constitution prohibits bankruptcy courts from issuing final orders regarding statutorily core claims unless they "stem [ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618. And the Court has subsequently held that when a bankruptcy court is faced with a claim that is statutorily core but constitutionally non-core—a so-called "*Stern* claim"—it must treat the claim as if it were statutorily non-core, submitting proposed findings of fact and conclusions of law to the district court for de novo review. *Exec. Benefits Ins. Agency v. Arkison*, —— U.S. ——, 134 S. Ct. 2165, 2173, 189 L. Ed. 2d 83 (2014).

781 F.3d at 70.

Counts X, XI, and XII here are not statutorily core claims in that jurisdiction over them does not arise under 28 U.S.C. § 157(b). Therefore, the Court must perform further analysis to determine whether there is a conflict between the purposes of the Federal Arbitration Act and the Bankruptcy Code in this case.

In *Moses v. CashCall*, the Fourth Circuit set forth a three-part test to determine whether there is a congressional intent that would "preclude a waiver of judicial remedies for the statutory rights at issue." 781 F.3d at 71. That intent must be discernable from "(1) the statute's text; (2) its legislative history; or (3) 'an inherent conflict between arbitration and the statute's

underlying purposes.'" *Id.* at 71 (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

The Trustee has not provided the Court any persuasive basis upon which to find that there is an irreconcilable conflict between the provisions of the Bankruptcy Code and the Arbitration Provision; he has cited to no legislative history, statutory text, or inherent conflict between the statutory provisions. Having found no overriding Congressional intention to override the Federal Arbitration Act in this situation, the Arbitration Provision must govern. The Court therefore finds that arbitration is appropriate as to Counts X, XI, and XII.

A more difficult question arises as to Counts XIII and XIV, the only other counts asserted against any of the Katz Defendants. While the Katz Motion does not seek dismissal of Counts XIII and XIV, the Katz Defendants argue that all issues alleged against them in the Second Amended Complaint are arbitrable. While Counts X, XI, and XII are non-core matters, Counts XIII and IV, asserted against JDKatz, are statutorily core under 28 U.S.C. § 157(b)(2)(H) because in them, the Trustee seeks to set aside and recover damages from a fraudulent conveyance. It remains for the Court to determine whether that alone suffices to override the Arbitration Provision.

The case of *McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari)*, No. 1:11cv1091, 2011 WL 5828013 (E.D. Va. Nov. 18, 2011), informs the Court's decision in this matter. In *El-Atari*, the trustee in the debtor's chapter 7 case

filed multiple adversary proceedings based upon § 548 of the Bankruptcy

Code.  One of the defendants moved to withdraw the reference of the

adversary proceeding pursuant to 28 U.S.C. § 157(d), arguing that the

bankruptcy court lacked constitutional authority to hear and decide the

matter.  The district court found that based upon the Supreme Court's ruling

in *Stern v. Marshall*, 564 U.S. 462 (2011), fraudulent conveyance actions are

not constitutionally core proceedings and bankruptcy courts have no

jurisdiction to issue final orders in such proceedings.[16]  The court in *El-Atari*

held that although § 548 fraudulent conveyance suits are statutorily core

under 28 U.S.C. § 157(b)(2)(H), they are more "akin to a common law contract

suit rather than an intertwined component of federal regulation."  2011 WL

5828013, at *2.

The Trustee seeks a money judgment against the Katz Defendants

under § 548 of the Bankruptcy Code.  Under the analysis of *El-Atari*, the

claim is statutorily core but not constitutionally core, since it seeks to

enhance the bankruptcy estate but does not arise through the claims

allowance process.[17]  As required by *Moses v. CashCall*, the Court must defer

---

[16]  *McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari)*, No. 1:11cv1091, 2011 WL
5828013, at *3 (E.D. Va. Nov. 18, 2011).

[17]  In *El-Atari*, the district court noted that "[t]he *Stern* Court confirmed the
*inanciera* view in its discussion of actions 'at common law that simply attempt[ ] to
augment the bankruptcy estate [which are] the very type of claim that we held in ...
*Granfinanciera* must be decided by an Article III court.' *Stern*, 131 S.Ct. at 2616.
*Stern*, together with *Granfinanciera*, clearly supports the conclusion that the
authority to issue a final decision in a fraudulent conveyance action is reserved for
Article III courts. *See Paloian v. Am. Express Co. (In re Canopy Fin., Inc.)*, No. 11 C
5360, 2011 WL 3911082, at *2 (N.D.Ill. Sept. 1, 2011)('[B]y likening the claim in

to the Arbitration Provision unless it finds an inherent conflict with the Bankruptcy Code that is sufficient to override by implication the presumption in favor of arbitration.  Using the Fourth Circuit's three-part test, the Court can make no finding of a congressional intent to override the Federal Arbitration Act.

At its heart, the § 548 claim in this case is simply an attempt to reclaim fees paid to the Katz Defendants.  The Trustee alleges that "[t]he Debtor did not receive reasonably equivalent value in exchange for any payments made to JDKatz during the two-year period prior to the Petition Date." Second Amended Complaint ¶ 104.  This allegation is in the nature of a fee dispute, which is exactly what the Arbitration Provision was surely meant to address.  Further, the Court finds that resolution of this issue along with the other issues between and among the Trustee and the Katz Defendants would be economically efficient and will not lead to inconsistent results.  Therefore, using the analysis of *Moses v. CashCall*, the Court will compel Counts XIII and XIV to be arbitrated pursuant to the Arbitration Provision.

Accordingly, the Court grants the parties such relief from the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a), as may be necessary to enable arbitration of Counts X, XI, XII, XIII, and XIV, and

---

question to the fraudulent conveyance claims in *Granfinanciera*, the *Stern* Court made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment on the [fraudulent conveyance] claims presented here.')."  2011 WL 5828013, at *2.

further action in this Court to recover against the Katz Defendants on the claims asserted against them in Counts X, XI, XII, XIII, and XIV is stayed pending the outcome of arbitration.

## THE SUERO MOTION

The Suero Motion seeks dismissal of two counts of the Second Amended Complaint. Those counts are Count IX (conversion) and Count XI (statutory business conspiracy).  In Count IX, the Trustee alleges that Suero and Rescue Rangers Delaware converted the Debtor's assets and operations by transferring them to Rescue Rangers Delaware.  The Trustee seeks an award in the amount of the value of the transferred assets and the costs of recovering those assets.  The business conspiracy allegations of Count XI as to Suero are the same as the allegations against the Katz Defendants that are summarized above.

In addition to his arguments as to each specific count, Suero also argues that he should be dismissed as a party defendant in this adversary proceeding.  He argues that the Trustee was tardy in asserting his claims against Suero and that "myriad claims that have already been filed in this case makes filing another claim unnecessary."  The Trustee points out that Suero was a debtor in this Court until October 16, 2017, and could not have been named a defendant at the inception of the adversary proceeding because of the automatic stay of § 362 of the Bankruptcy Code.  In addition, the Trustee points to Rule 15 of the Federal Rules of Civil Procedure, Fed. R. Civ.

P. 15, made applicable here by Bankruptcy Rule 7015, Fed. R. Bankr. P.

7015, which provides that leave to amend a complaint should be granted

freely "when justice so requires."

In this instance, the Court is of the opinion that adding Suero as a

party defendant does not prejudice him in any significant way.  The

proceeding is not so far advanced that adding Suero at this stage will put him

at a disadvantage.  This is especially true because Suero was the sole owner

of the Debtor and is the sole owner of Rescue Rangers Delaware.  As such, he

has already been involved in this adversary proceeding and will not be

coming into this adversary proceeding unaware of its substance.  Thus, the

court finds that formally adding him as a party defendant will not be unduly

prejudicial.  Contrary to Suero's contention, the fact that the Trustee has

asserted claims against other entities does not relieve Suero of potential

liability.  Accordingly, the motion to dismiss him as a party defendant will be

denied.

Suero next asserts that Count IX, the conversion claim, should be

dismissed against him because it seeks money damages as opposed to the

return of a specific piece of property.  However, Suero's reliance on the case of

*Mar Tech Mechanical, Ltd. v. Chianelli Bldg. Corp.*, No. L00-2234, 2001 WL

1262387 (Cir. Ct. Va. Mar. 6, 2001), is misplaced.  In that case, the Virginia

court was addressing a subcontractor's claim of conversion arising from the

contractor's failure to pay it for work performed on a contract.  The court

explained that in order to succeed on a claim of conversion, the plaintiff must establish that the defendant wrongfully deprived him of specific property, and that there could be no conversion without that "wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Id.* at *6. The court found that because the plaintiff did not allege that "a specific, tangible item [was] being wrongfully held," the defendant's demurrer as to the conversion claim should be sustained. *Id.*

In *Mar Tech*, the Virginia court did not say that return of property was the only remedy in a conversion action, only that a conversion claim arises when a defendant has deprived a plaintiff of property to which the plaintiff had an immediate right of possession. The court found that under the facts before it, the plaintiff had stated a claim for contractual damages and not one for conversion, the defendant having not deprived the plaintiff of a specific res but rather having failed to perform under its contract.

The law in Virginia is that "the measure of damages for conversion is the 'value of the property converted at the time and the place of conversion.'" *Marsteller v. ECS Fed., Inc.*, No. 1:13cv593 (JCC/JFA), 2013 WL 4781786, at *8 (E.D. Va., Sept. 5, 2013) (quoting *Straley v. Fisher*, 10 S.E.2d 551 (Va. 1940)). *See also E.I. DuPont de Nemours and Co. v. Kolon Indus., Inc.*, Civ. No. 3:09cv58, No. 2011 WL 4625760, at *2 (E.D. Va. Oct. 3, 2011). In Count

IX, the Trustee has not alleged a claim for breach of contract, as was the case in *Mar Tech*, but one for conversion.  Therefore, Suero's motion to dismiss Count IX will be denied.

In Count XI, the Trustee argues that the Katz Defendants and Suero conspired, in violation of Va. Code Ann. § 18.2-499, to fraudulently transfer the assets and operations of the Debtor to Rescue Rangers Delaware.  Suero has moved to have this count dismissed against him, arguing that the facts do not support this claim.  He argues that he was acting as agent for the Debtor when causing the transfer of assets to Rescue Rangers Delaware and as such he could not have conspired with the Debtor, as an agent may not conspire with its principal.  This is generally true under Virginia law. *See Stradtman v. Republic Services, Inc.*, No. 1:14cv1289, 2014 WL 6698946, at *6 (E.D. Va. Nov. 25, 2014).  However, viewing the facts as pled in the light most favorable to the Trustee, it is possible that Suero and the Katz Defendants were acting not as agents for the Debtor but perhaps as agent for Rescue Rangers Delaware.  (*See* Complaint ¶¶ 25, 33 as well as Exhibit A).

Because it is possible that Suero and/or the Katz Defendants were not acting as agents of the Debtor, the Second Amended Complaint contains sufficient allegations to allow the Court to draw the reasonable inference that Suero is liable.  This satisfies the standard set forth in *Iqbal*, and dismissal is not proper.  In light of the questions that exist as to the capacity in which Suero may have been acting, the Court need not yet further discuss the

Virginia intracorporate immunity doctrine, undertaking that analysis only

should it become necessary.

Signed: March, 22, 2018                          _____/s/ Keith L. Phillips_____
                                                 United States Bankruptcy Judge


Copies:                                                  Entered on Docket:  March 22, 2018

Christian K. Vogel
Vogel & Cromwell, LLC
8550 Mayland Drive Suite 204
Richmond, VA 23294

John T. Donelan
Law Office of John T. Donelan
125 S. Royal Street
Alexandria, VA 22314

Jeffrey H. Geiger
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

John C. Smith
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

Lynn L. Tavenner
20 North Eighth Street, Second Floor
Richmond, VA 23219